ROLLIN S. KETCHUM, JR., ET AL. *vs.* THOMAS E. PACKER.

First Judicial District, Hartford, January Term, 1895.* ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A joint judgment may properly be rendered in favor of several beneficiaries who unite in a suit to recover damages for the conversion of a single trust fund equitably owned by them, although they are unequally interested in such fund. The proportion in which the entire fund belongs to each beneficiary is a question of no concern to the defendant.
The question whether the defendant, at the time of receiving certain securities, had actual knowledge that they were trust funds, and improperly

* Transferred from the second judicial district by agreement of parties and consent of court.

in the hands of the one from whom he received them, is one of pure fact, the finding upon which this court cannot review.

The defendant, who knew the trust character of certain bonds, and that *T* held them and had pledged them to certain banks in violation of the trust, agreed with *T* to procure him money to pay the bank loans, and to receive from him the bonds as collateral, and thereupon gave the banks his own note in payment of *T's* note, and repledged to them the bonds as collateral. *Held* that the rule which protects the purchaser with knowledge, provided he buys from a *bona fide* holder for value and without notice, had no application; as the defendant must be regarded as having received the bonds from *T* rather than from the banks.

In addition to the trust bonds, *T* had also pledged to the banks $4,000 of bonds loaned to him by the defendant, which were among those repledged by defendant to the banks. Including these, the defendant received from the collateral $3,700 more than the amount of his loan to *T*. *Held* that to allow defendant to retain this amount, on the ground that it was the proceeds of his own bonds, would be to allow him to take advantage of his own wrong.

A witness for the plaintiffs was asked: "Have you ever had any communication with the defendant, in which he stated to you, or you to him, that *T* had those bonds?" Objection was made on the ground that such conversation was had after the defendant received the bonds in question. The objection was overruled, and the witness related a conversation showing knowledge of the defendant of the trust character of the bonds, had subsequent to his receipt of most of the securities, but prior to the receipt of one. *Held* no error; both because the testimony was pertinent as to the one bond, and because the court could not know until the answer was given whether it would not show knowledge previous to the receipt of any of them.

Under Public Acts of 1893, chapter 174, § 4, the trial judge should indorse each paragraph of the request for a finding, with the phrase "Proven" or "Not proven." No change from this formula is to be approved. But where the judge marked the paragraphs of such a request "Found" and "Not found," this court will treat those expressions as meaning "Proven" and "Not proven." Unless a paragraph is so framed that it can be found "Proven" as a whole, it should be marked "Not proven." No change, modification, or reference is required, or proper.

[Argued January 8th—decided February 8th, 1895.]

ACTION for the conversion of certain trust bonds, brought to the Superior Court in New London County, and tried to the court, *Hall, J.*; facts found and judgment rendered for plaintiffs, and appeal by the defendant for alleged errors of the court. *No error.*

The case is sufficiently stated in the opinion.

*Hadlai A. Hull* and *Wm. F. M. Rogers,* for the appellant (defendant).

I. The court erred in overruling the defendant's objection to the questions asked of Ketchum concerning the conversation with the defendant subsequent to the latter's receipt of the bonds.

II. The judgment was defective. The defect consisted in including in the judgment rendered in favor of six plaintiffs $700, in which five of the plaintiffs had no right or title. The fact that the plaintiffs agreed to adjust their respective interests among themselves can make no difference. *Tate* v. *Ohio & Miss. R. R. Co.,* 10 Ind., 174; General Statutes, §§ 883, 885. The personal property of Mary D. Ketchum in which the other plaintiffs had no interest whatever was No. 23 Dolores Co. for $500, and No. 23 San Miguel Co. for $200. The other plaintiffs have received judgment for the value of this property.

III. The good faith and want of knowledge of the banks of the trust character of the bonds protect the defendant as a matter of law. 18 Amer. & Eng. Ency. of Law, 608; 1 Perry on Trusts, § 222; 2 *ibid.,* § 830; *Fifth Nat. Bank* v. *Village of Hyde Park,* 101 Ill., 595; *Alexander* v. *Pendleton,* 8 Cranch, 462; *Demorest* v. *Wyncoop,* 3 Johns. Ch., 147; *Varick* v. *Briggs,* 6 Paige, Ch., 323; *Salsbury* v. *Bagott,* 2 Swanst., 608; *Mott* v. *Clark,* 9 Barr, 399; *Boynton* v. *Reese,* 8 Pick., 329; *Griffith* v. *Griffith,* 9 Paige, 315; *Bradwell* v. *Catchpole,* cited in *Walker* v. *Simmons,* 3 Swanst., 76; *Jackson* v. *McChesney,* 7 Cowen, 360; 17 Am. Dec., 521, and note; *Sweet* v. *Green,* 1 Paige, 476; *Bracken* v. *Miller,* 4 W. & S. (Pa.) 111; *Sweet* v. *Southcote,* 2 Brown's Ch., 66; *Brandlin* v. *Ord,* 1 Atk., 571. The same doctrine was stated and maintained for the reasons given in the following cases: " Or otherwise it would very much clog the sale of estates." *Lowther* v. *Charlton,* 2 Atk., 242. " For otherwise a bona fide purchaser might be deprived of the benefit of selling his property for full value." *Trueluck* v. *Peoples,* 3 Kelly, 446. " If .it were not so the bona fide purchaser without notice might be unable to dispose of the property, and thus its value

in his hands be materially deteriorated." *Church* v. *Ruland,* 64 Pa. St., 441. " The reason is, to prevent a stagnation of property." *Martine* v. *Joliffe,* Amb., 315. " As otherwise the estate would be inalienable forever." *Andrew* v. *Rigley,* 4 Brown, Ch., 136. " The reason is, to prevent a stagnation of property, and because the first purchaser being entitled to hold and enjoy must be equally entitled to sell." *Bumpus* v. *Plattner,* 1 Johns. Ch., 213. The defendant, in assuming and purchasing the notes which Tinker had in the banks, as found by the court, was not a volunteer, but was protecting his own property in the banks, and so the defendant was a purchaser for value both of the notes and of the securities.

No equities which might be helped by marshalling of assets, to have the defendant's or Tinker's bonds first applied for the payment of the Tinker notes, can be invoked here, because the defendant's notes to the banks were paid and the securities sold and applied long before any demand was ever made for the securities by the guardian.

IV. It is the province and duty of this court to correct the finding with reference to this matter of knowledge and, upon finding want of facts sufficient to prove knowledge, to reverse the judgment. The court is authorized to examine the whole case, including the testimony, for the purpose of correcting this record and determining whether the court below gave due weight and consideration to the facts claimed to have been proven, as set forth in the defendant's requests, and whether the court below has found the necessary preliminary facts to warrant the finding of knowledge, and the judgment.

V. The court has not properly or sufficiently found that the defendant possessed knowledge that these bonds were trust bonds. A finding of simple knowledge of this fact is not enough to warrant a judgment in favor of the plaintiffs in this case. Guilty knowledge, guilty purpose, fraudulent knowledge and purpose must be found; or that the defendant knew that the bonds pledged to the banks by Tinker were pledged in violation of law; or in other words that the defendant, when he assumed and bought Tinker's notes to

the banks, was mindful and fully cognizant that he was receiving trust property in violation of law. Such knowledge, as is required in this case for the plaintiffs to recover, must amount to a finding of fraud. *Wheaton* v. *Dyer*, 15 Conn., 311; *Bush* v. *Golden*, 17 id., 603; *Craft's Appeal*, 42 id., 146. The facts upon which such finding is based must be found.

The case of *Crandall* v. *Lincoln*, 52 Conn., 73, on which the plaintiffs seem to rely, is not an authority in this case.

Knowledge in this case is the main fact upon which final judgment is founded, and is a bare conclusion of law from facts which the court has failed to detail or find. *Goodwin* v. *Amer. Nat. Bank*, 48 Conn., 566; *Shaw* v. *Spencer*, 100 Mass., 382; Beech Mod. Eq. Jur., Vol. I., § 348; *Boggs* v. *Varner*, 6 Watts & S., 469; *Hamilton* v. *Royse*, 2 Sch. & Lef., 377; *Leake* v. *Watson*, 58 Conn., 336.

*Walter C. Noyes*, for the appellees (plaintiffs).

I. Upon the facts found the right of the plaintiffs to recover is supported by all the authorities. The guardian had no right to loan the bonds to Tinker to be used as collateral in his business, and such loan constituted a breach of the trust. 2 Perry on Trusts, § 832; *Leake* v. *Watson*, 58 Conn., 351; *Loring* v. *Brodie*, 134 Mass., 453; *Shaw* v. *Spencer*, 100 id., 382; *Duncan* v. *Jaudon*, 15 Wall., 165.

The defendant receiving the bonds with knowledge of their trust character, became liable for such trust property in his hands, or for the avails of any sold by him. *Leake* v. *Watson, supra; Crandall* v. *Lincoln*, 52 Conn., 108; *Goddard* v. *Prentice*, 17 id., 553; *Pennel* v. *Deffel*, 4 De G. M. & G., 372, 388; *National Bank* v. *Insurance Co*, 104 U. S., 54; *Smart* v. *Ayer*, 101 id., 320; *Cook* v. *Tullis*, 18 Wall., 341; *Ashton* v. *Atlantic Bank*, 3 Allen (Mass.), 217; *Shaw* v. *Spencer, supra; Van Allen* v. *Am. Nat. Bank*, 52 N. Y., 1; *Walker* v. *Taylor*, 4 Law Times (N. S.), House of Lords, 845; Perry on Trusts, Vol. I., § 217, Vol. II., § 828; 2 Lewin on Trusts, p. 1150.

II. The testimony of Ketchum objected to by the defend-

ant was clearly admissible. It appears from the finding that the No. 23 San Miguel Co. bond was received by the defendant *after* said conversation. For the purpose of proving notice concerning *this* bond the evidence was, in any event, admissible—and if admissible for any purpose, error will not lie. The defendant seeks to take advantage of the rule that a man who is himself a purchaser of trust property with notice, from a person who bought without notice, may shelter himself under the first purchaser. The reason given in the books for this rule is " that otherwise it would very much clog the sale of estates." It is a rule of policy rather than of equity and should not be extended.

The defendant, in order to take advantage of the rule of law stated must prove—(1) title in the banks, and (2) that the banks transferred such title to him. Upon the facts stated, however, it seems clear that the defendant cannot establish either of these essential points. The banks never acquired title to the bonds. They had a lien with an inchoate right to appropriate the bonds to the payment of the notes *after* default—a right *in rem* and not *in re*. This right the banks never exercised and were never in a position to exercise, because all the notes—Tinker's and the defendant's—were paid *before* maturity. The Tinker notes when paid were surrendered to him. The collateral in law went with the notes to which it was pledged. When the notes were paid and surrendered to their maker, the banks had no further claim upon, or interest in, the collateral. If the bonds remained in the banks, they were simply naked custodians. They could have conveyed no interest to the defendant, and they attempted to make no such conveyance. From the beginning to the end of the transaction it is apparent that the defendant claimed through Tinker.

FENN, J. This action was brought by Rollin T. Ketchum, Jr., and William T. Ketchum, and in behalf of Annie R., Frederick M., Mary D. and Beulah T. Ketchum, minors, by their guardian. The cause of action, as stated in the amended

complaint, is the alleged conversion by the defendant of certain trust bonds and securities belonging to the plaintiffs. They claimed, by way of equitable relief, a discovery, an injunction, and a judgment for re-transfer of the property; and by way of alternate relief, in case said property had been so disposed of that it, or its avails, could not be transferred by the defendant to the plaintiffs, $7,000 damages. The defendant, to the defense of denial, joined as a special answer that the bonds and securities alleged in said complaint to have been received by the defendant were transferable by delivery, and were held by the banks—from which it was alleged in the complaint he had received them—as securities for loans made to one Charles R. Tinker by said banks, upon notes indorsed by the defendant; that when said notes became due said Tinker was unable to pay the same, and the defendant, as such indorser, was compelled by said banks to pay said notes, and took from said banks said securities and bonds so held by said banks as security, and sold the same and applied the proceeds and avails of said sale towards the payment of said notes, by the permission and authority of said Tinker, which proceeds and avails were not sufficient to reimburse the defendant; that the knowledge and notice of the defendant, as to the ownership of said bonds and securities, was the possession by said banks of the same. This answer was denied by the plaintiffs.

The court found that Rollin T. Ketchum, father of the plaintiffs, was duly appointed their guardian; that as such guardian he received certain personal property, consisting of bonds, stocks, and savings bank deposits, which had been bequeathed to his wards by their grandmother; that in 1885 he had reinvested all of this property though the agency of the defendant, who resided in the same town and was a dealer in investment securities, and received in exchange certain other bonds and securities at various times subsequent thereto, and prior to February, 1890; that certain of these bonds and securities were again exchanged for other securities, all through the agency of the defendant; that between June, 1888, and August, 1892, the said Ketchum,

guardian, loaned one Charles R. Tinker, his son-in-law, all the bonds and securities of the wards so purchased from the defendant and held in trust, to enable the said Tinker to use the same as collateral for loans procured by said Tinker in his business as a merchant in New London; that in August, 1892, Tinker made an assignment in insolvency; that none of said bonds were ever returned or accounted for by said Tinker; that when Tinker received said securities from said Ketchum, he had actual knowledge that they belonged to said wards and were being disposed of by said Ketchum in violation of the trust under which they were held by him as such guardian ; that the defendant had knowledge of said transactions between said Tinker and Ketchum ; that among these bonds and securities were certain specified ones, amounting in value, in the aggregate, to $4,300, which afterwards came into the possession of, and were converted by, the defendant, under the circumstances hereinafter detailed; that two bonds called Nos. 27 Dolores County, for $500, and 23 San Miguel County, for $200, had been transferred by Tinker to the defendant as collateral to loans, the others having come to the defendant from two banks, where they had been pledged by Tinker as collateral; that neither of said banks knew that the bonds were trust property, nor that said Tinker might not lawfully and properly pledge the same to secure his notes; that the trust character of said property was in no measure indicated upon said securities, and they were all payable to bearer. Judgment was rendered by the court in favor of the plaintiffs for the sum of $4,665.50 and costs.

The defendant having appealed, requested the judge to incorporate in the finding certain alleged facts which he claimed to be proven by the evidence, embraced in 147 numbered paragraphs. Many of these relate to matters embraced in the finding, and are identical in purport with statements therein contained. These, of course, require no further comment. But many other paragraphs differ essentially from the finding. The court wrote upon the margin of the several paragraphs "found" and "not found," instead of

"proven" and "not proven," which is the form prescribed by the statute. Public Acts of 1893, Chap. 174, § 4. The defendant insists that he is thus deprived of the right which the statute confers, because he says that the meaning of the words "proven" and "found" is not identical; that while no fact should be found that is not proven, a fact may be proven and yet not found by the court. And we are asked to infer that the court below purposely used the word "found" in a strict technical sense, and not intending it as synonymous with "proven;" regarding the paragraphs marked "not found" simply as immaterial. But, in the absence of anything in the record to render plausible such an inference, we are unwilling to make it. On the contrary we entertain no doubt that the judge used "found" as meaning "proven," and "not found" as signifying "not proven." But we ought to say that such a change from the formula required by the statute is not to be approved. So, too, the expressions in the margin of many of the paragraphs, such as "not found except as stated in the finding," "found only as in finding," and the like, do not comply with the statute. The purpose of the requirement for separate numbered paragraphs is to insure singleness, as well as clearness, of statement. Unless a paragraph is so framed that it can be found "proven" as a whole, and precisely as stated, it should be marked "not proven." No qualification, modification, or reference is required or proper.

The defendant filed seventeen numbered exceptions to the finding of facts made by the court, and to the refusal to find facts as requested. These exceptions constitute the basis of several, but it is very difficult to determine precisely how many, of the defendant's sixty-one reasons of appeal. The principal grievance complained of is that the court has found that at and prior to the time that the trust securities came into the hands of the defendant, he knew that said bonds and securities were held by Ketchum, as guardian, belonged to his wards, had been loaned to him by Tinker to be used as collateral, and that such use of said bonds by said Ketchum and said Tinker was improper. The defend-

ant asserts that such finding was not warranted by the evidence.  By far the larger part of the brief of his counsel, and of the time occupied in oral argument in its support, was devoted to the effort to procure a correction by this court of the finding of the court below, in respect to this particular.

The views of this court concerning the statute of 1893 have been so recently and so fully stated in other cases, especially in *Styles* v. *Tyler*, 64 Conn., 432, that no occasion exists to enlarge upon them here.  But the defendant relies upon language used in *Styles* v. *Tyler*, at p. 459, namely, that it is the province of this court to determine "questions of legal conclusion where law and fact are so intermingled that the main fact is not a pure question of fact, but a question of the legal conclusion to be drawn from subordinate facts;" and it is his claim that the facts upon which the finding that the defendant knew, were based, should be stated, and the conclusion drawn from them can be reviewed upon the evidence reported.  This claim is not tenable.  The parties in the pleadings and throughout the trial regarded the inquiry as to knowledge as one of fact. The amended complaint contained the allegation of such knowledge.  This was a material averment and was denied by the defendant.  Upon the argument of the case in the court below, counsel for the defendant claimed, as a matter of fact, and asked the court to find, that the defendant at the time he received said securities had not actual knowledge that said bonds belonged to the children of Rollin T. Ketchum, and were guardian bonds.  The court overruled the claim and found otherwise, as has been stated.  The view then taken by counsel was correct.  The question as to actual knowledge is purely one of fact; whatever the rule may be as to notice, actual or constructive, between which and knowledge a clear distinction exists.  2 Pomeroy's Eq., § 592.  We cannot disturb the finding.  Having carefully read the evidence reported, we do not wish to be understood as intimating any regret because of such inability.

Taking the finding as it stands, the numerous remaining reasons of appeal present in substance three claims of error

only, for our determination. We will consider these in the order in which they are treated in the defendant's brief. It appears in the record that during the trial counsel for the plaintiffs asked of Rollin T. Ketchum, as a witness, the following question: "Have you ever had any communication with Mr. Packer (the defendant) in which he stated to you, or you stated to him that Tinker had these bonds (the bonds in question)?" To this inquiry counsel for the defendant objected, upon the ground that the conversation referred to occurred subsequent to the time when it was alleged that the defendant received the bonds in question. The court overruled the defendant's objection, and admitted the inquiry, and the defendant excepted. The witness answered: "He came to me and said, 'Roll., how many of the bonds did you let Charlie have?' I said I let him have all of them. He said, 'Did you let him have the childrens' bonds?' I said, 'Yes.' He said, 'I am sorry you let him have those, because I am afraid they are going to be jeopardized.'" It was found that the bonds in question were all received by the defendant from Tinker, prior to said conversation, excepting one, No. 23 San Miguel County bond, which was received by the defendant from Tinker after the conversation.

We think the action of the court in permitting the inquiry was correct. It is true that it further appears in the finding that during the argument which ensued upon the matter, counsel for the plaintiff claimed that the defendant would be liable even if he learned that said bonds were trust funds after having received them. We consider this claim incorrect. But in fact one of the bonds was received after the conversation. So the only ground of the objection taken failed. Besides, as to the other bonds, it could not be known until the answer was given, that such answer would not show that the defendant had knowledge previous to his receiving them. This was the ground on which, as the record states, the court permitted the question. Had the ruling been otherwise, and judgment been rendered for the defendant, this court, upon appeal by the plaintiffs, in igno-

rance of what the answer might have been, must have found error, and granted a new trial.

The defendant further claims that the judgment rendered is defective, because, as he asserts, there is included in such judgment " given to the six plaintiffs, seven hundred dollars, in which five of the plaintiffs had no right or title." In the first place, this assertion is not supported by the finding. In explanation, the defendant says that bond No. 23 Dolores County, for $500, and bond No. 23 San Miguel, for $200, were sold to Mary D. Ketchum, and that the other plaintiffs have no ownership in either of these two bonds. But this was precisely what was stated in paragraphs 15, 16 and 17 of the defendant's requests for incorporation of facts in the finding, and upon the margin of each of these paragraphs the court has written " not found ; " while in the finding made, the entire statement upon this matter is : " The ward Mary D. Ketchum had received a somewhat larger bequest from her grandmother than the other children. The property of all the wards was held, managed and disposed of by the guardian, as a single trust fund." There was no objection to evidence as to these bonds made at the trial, nor was it claimed that the amount thereof should not be included in the judgment. The only claim upon the matter made in behalf of the defendant, in the court below, was that: " As the evidence showed a greater interest on the part of Mary D. Ketchum in said trust property than of the other plaintiffs, a separate judgment could not be rendered in her favor." Exactly what was intended by this language may be doubtful. But it is unnecessary to consider, for counsel for plaintiffs thereupon, in behalf of all said plaintiffs, asked that a joint judgment be rendered in their favor, stating that the plaintiffs would adjust their separate interests among themselves, without the intervention of the court. Counsel for defendant made no objection to such form of judgment then, and should certainly not do so now. Even if it had appeared —as it did not—that Mary D. Ketchum, in addition to her joint interest with the other plaintiffs in all the property in which they were interested, had a separate and distinct

interest in some of the property converted, in which they were not interested, even then the matters in dispute would not have been distinct and unconnected; and such a judgment as that rendered, disposing of all the controversy in a single suit, might well be regarded as beneficial rather than injurious to the defendant, and his waiver of all objection would have appeared reasonable upon that ground. But, upon the facts found, nothing was embraced in the judgment which was not in the strictest sense a proper subject to be included therein. There was but a single trust fund, which was the subject of the action, in which all the plaintiffs had an interest. That being so, the proportion in which such interest belonged to each was a question in which the defendant had no concern. It was enough for him that in some proportion it belonged to all; that in the language of General Statutes, § 883, they were: "All persons having an interest in the subject of the action, and in obtaining the judgment demanded."

Finally, the defendant claims that the court below erred in its judgment, because, upon the facts found, the good faith and want of knowledge of the banks, of the trust character of the bonds, protect the defendant, as matter of law. He invokes the rule that: "If the first purchaser from the trustee takes the property *bona fide* and for value, and without notice, all purchasers from him will take the property discharged of the equitable claims, although they had notice of them at the time they purchased from the first purchaser, and such notice from them cannot convert them into trustees." 1 Perry on Trusts (4th Ed.), § 222. We have no occasion to question the rule, which is confessedly founded on public policy, to "prevent a stagnation of property," and for the relief of the *bona fide* purchaser, who "otherwise might be deprived of the benefit of selling his property for full value." We only desire to say that consideration for the subsequent purchaser with knowledge, was not a reason why the rule was adopted. Nor is it a ground for its extension. If the defendant comes plainly within it he is pro-

tected by it, as a matter of law.   If he does not, there are no equities growing out of it and enuring to his benefit.

The inquiry, then, is whether the defendant was in fact a purchaser from the banks.   The bonds,—other than No. 27 Dolores County and No. 23 San Miguel County—were deposited by Tinker, together with other bonds, with the two banks as security respectively for his two notes in said banks. Four of these guardian bonds, amounting to $3,000, with other bonds belonging to Tinker himself, amounting to $2,000, in all $5,000, were deposited with the Bank of Commerce as collateral to his note for $2,900.   Two of the guardian's bonds amounting to $600, with other bonds belonging to the defendant and loaned by him to Tinker to be used as collateral, amounting to $4,000, and one bond belonging to Tinker of $500, in all $5,100, were deposited by Tinker in the City Bank, as collateral to his note for $3,500.   Both of these notes contained powers of sale of said securities, and were renewals of similar notes previously given to said banks by said Tinker, and secured in the same manner.   Sometime before either of said notes fell due, both of said banks informed Tinker that they would require payment of said notes when they fell due, or further security for the payment thereof.   Tinker thereupon made an arrangement with the defendant to whom he was then largely indebted, by which he gave to the defendant his note for $6,400, and pledged to the defendant, as collateral security therefor, all the securities pledged for the payment of the notes at the banks, together with another guardian bond of the value of $500.   Thereupon before said notes at the banks fell due the defendant (whom it is to be borne in mind the court has found then knew the character of the trust bonds), under said arrangement with Tinker, and with the consent of said banks, who had knowledge of said arrangement between Tinker and the defendant, gave to said banks respectively, his notes for the same amount as the former notes, pledging to said banks, as collateral security therefor, the same securities so pledged to him by said Tinker for the payment of said $6,400.   The banks accepted said notes, and thereupon

stamped said notes of Tinker as paid, and surrendered the same to said Tinker, and thereupon held said securities—which were not taken from the possession of said banks in carrying out said arrangement—as collateral for the payment of said notes. These notes, and also the $6,400 note given by said Tinker, were renewed from time to time. After the last $6,400 note to the defendant, but before the last renewal notes to the banks, became due, the defendant paid said notes to the banks and received from them all said securities and sold them—including the No. 23 San Miguel County bond belonging to said trust, which had been delivered to the defendant by Tinker as collateral for defendant's indorsements of Tinker's note, and which defendant was compelled to pay, excepting those securities belonging to the defendant—at their face value, and indorsed the avails of the sales as a part payment upon Tinker's $6,400 note.

Now, analyzing this transaction, it will be seen that the banks were not purchasers of these bonds from Tinker, nor the defendant purchaser of them from the banks. The initiate title of the banks never became consummate. All the notes for which they were deposited as collateral security, both those of Tinker and of the defendant, were paid before maturity. The banks, therefore, neither exercised, or ever had the right to exercise, the power of sale. The defendant must trace his title to Tinker, the wrong-doer; not to the banks, who were innocent. But the defendant asks: "What difference is there in principle between his paying the notes before due and taking the securities by agreement of all parties concerned, and purchasing the notes from the banks as a commercial transaction and receiving the securities from the banks as collateral?" If the latter had in fact been done by an outside party, he would have had $10,100 as collateral for $6,400 of notes. Converting the collateral at its face value, if it became necessary to convert it, he would surely have had to account for $3,700. The trust funds in this $10,100 (leaving out the $500 and the $200 afterwards received by the defendant, with knowledge), amounted to $3,600, Tinker's own bonds to $2,500, and the

defendant's to $4,000. Thus, the collateral, other than guardian bonds, amounted to $100 more than the loan. The defendant, it is true was far from being an outside party. But can this operate to his advantage ? Ought he to be allowed to protect his own collateral from loss, by converting what he knows to be trust property? We think not. The defendant's brief on this point closes with the assertion : " No equities which might be helped by marshaling of assets to have the defendant's or Tinker's bonds first applied for the payment of the Tinker notes can be invoked here, because the defendant's notes to the banks were paid, and the securities sold and applied, long before any demand was ever made for the securities by the guardian." It would seem that the necessity of resorting to the claim that the equities in favor of the plaintiffs arising from the transaction were barred, would have indicated to the defendant that he stood in no position to invoke any principle of equity in his own behalf. Accounting for these bonds, he is in no worse position than if he had done what equity required he should have done in the first instance—see that Tinker's collaterals were applied in part payment, and then bear the loss to the extent of his own. To hold that by his own unauthorized act he can place himself in a better position, would be to allow him to take advantage of his own wrong.

There is no error in the judgment complained of.

In this opinion the other judges concurred.