Haight *against* Cornell and others.

*A* having commenced an action of ejectment to recover possession of a school-house, the district to which it belonged, claiming title to the land on which it stood under a lease from *A,* appointed *B* a committee to procure the lease, have it examined by counsel, and take such steps as might be deemed necessary for the maintenance of their rights. *B* accordingly procured the lease, and having taken legal advice, employed counsel to defend the suit, and then made his report to the district, stating the circumstances under which he obtained the lease,—that *A* had borrowed it of the person having the custody of it for the district, giving his word and honour that it should be returned promptly, whenever called for; that *B* obtained it only after much time and many promises, " owing to the bad faith of *A ;*" and that the suit commenced by *A* could not, in the opinion of counsel, be sustained, "although *A,* regarding the gratification of personal pique more than the

advancement of the interests of the district, and holding light his honour and his duty as a professor of religion, may cause the district much trouble and expense." In an action for a libel, brought by *A* against *B*, it was held, 1. that the language of the report, if false and malicious, was libellous; 2. that in the absence of any justification on the ground of a privileged communication, the defendant must be considered as having meant what his language fairly imports; 3. that it is the exclusive province of the court to determine the construction of the language used; 4. that the defendant may show, that such language was a communication privileged by the occasion; 5. that the object and intent of the party in making it, and the fairness and honesty of the transaction, are material subjects of inquiry, proper to be referred to the jury; 6. that the jury having found, in this case, that the defendant used the language *bona fide*, in the fair exercise of his powers as a committee of the district, the presumption of malice was thereby repelled, and a justification established.

*Fairfield,*
June, 1842.

Haight
*v.*
Cornell.

THIS was an action for a libel. The writing complained of as libellous, was a report, made by the defendants, as a committee of the *Factory School District* in *Greenwich*, to that district; which was set out in the declaration, with proper innuendoes, and was as follows:

"To the *Factory School District.*

The committee who were to procure the lease granted by *Daniel Haight* of the ground on which the school-house stands, and subject the same to competent counsel, and take such other steps as may be deemed necessary for the maintenance of our rights, respectfully report: That after much labour and time, they have been enabled to trace the lease from the late *Thomas Green*, in whose hands it remained from the date thereof, (12th *December*, 1832,) he being, at that time, one of the committee appointed by the school society for this district, to a short time previous to his death; and not having it recorded, placed it in the hands of *Daniel Sherwood* for safe-keeping. It remained in Mr. *Sherwood's* possession, from that time until last fall, when Mr. *Daniel Haight* [the plaintiff] called to examine it, and requested the loan, a few days, on condition that it should be returned promptly, whenever called for. Mr. *Haight* giving his word and honour to this effect, he was allowed to take it, by Mr. *Sherwood;* and after much time and many promises, your committee are only this day enabled to obtain possession of it, owing to the bad faith of said *Haight*. Your committee have submitted the lease to the examination of *J. B. Ferris* Esq. of *Stamford*, who is of opinion, that the lease is yet valid, and can only be affected,

HARVARD LAW LIBRARY

by a transfer of the lessor's property.   Any suit at law by the lessor, either for trespass or ejectment, cannot affect either the lease or the district; although the lessor, one of the committee appointed by the school society, regarding the gratification of personal pique, more than the advancement of the interests of the district, and holding light his honour and his duty as a professor of religion, may cause the district much trouble and expense.   Your committee left the lease at the clerk's office to be recorded; and have engaged Mr. *Ferris* to attend to the suit brought against the teacher at present in your employ, by *Daniel Haight*, and to attend to the interests of the district.   And your committee, who are a majority of the trustees appointed by the school society, approve of the course pursued by the district, as the only one calculated to protect your rights.   Your committee, in hope of a faithful discharge of their duty, respectfully submit their report for your consideration.   *Factory District, March* 29th, 1839."   [Signed by the defendants.]

The defendants pleaded the general issue, with notice of a justification, by proving the truth of the matter stated in the report.

The cause was tried at *Danbury, September* term, 1841, before *Church,* J.

The plaintiff read in evidence the alleged libel as set forth in his declaration, and introduced evidence of its publication by the defendants.

The defendants did not claim that the words of their report were not, while unexplained, libellous and actionable; and neither party requested the court to charge the jury on that point; but the defendants claimed, that they did not make or publish such report with the motives alleged in the declaration, but were justified, under the circumstances proved in the case, in publishing it.

Under the notice given by them, they read in evidence the following vote of said school district: " Resolved, that the district committee be instructed to procure the lease granted by *Daniel Haight*, and subject the same to competent legal counsel, and take such steps as may be deemed necessary for the maintenance of our rights."   This vote was accompanied by evidence that the defendants were such district committee, and that as such committee, the plaintiff subjected them

to many delays in procuring said lease. The defendants also introduced evidence to prove and claimed they had proved, that the plaintiff had commenced an action of ejectment against the school-master of the district school of this district, to dispossess him of the school-house, and break up the school, contrary to the wishes of the district, because he had a private quarrel with the school-master, and for no other reason: that they, as a committee of the district, made in good faith a report to the district, in pursuance of their appointment, which, by vote of the district, was accepted, approved and recorded, and which report is the alleged libel set forth in the declaration: and that the facts stated in such alleged libel were true.

The plaintiff claimed to have proved, that he had leased the land on which the school-house was erected, to the district, for twenty years, for the purpose of keeping a district school, subject to an annual rent of fifty cents, and that such rent had never been paid; that the school then kept in the school-house on said land, was not a district school; and that he, therefore, brought said action of ejectment. He also claimed to have proved, that he had not subjected the committee to any unreasonable delays in obtaining the lease, but had procured it for them from his counsel, in whose hands it was, as soon as possible. He also claimed, that the defendants, in making their report, had gone beyond their duty; and that the charges therein contained, were not warranted by the facts in the case; but that the defendants had availed themselves of their official situation to defame him wantonly.

The court charged the jury, on this part of the case, as follows: "A libel is a false and malicious writing, published of another, which renders him contemptible or ridiculous in public estimation, or exposes him to public hatred or contempt, or hinders virtuous men from associating with him. The writing must not only be false, but it must be malicious; but if it is false, the law will presume it to be malicious; which presumption may be rebutted, by evidence and the circumstances of its publication. If language be used *bona fide*, in any public body, to obtain a legal right, the presumption of malice will be rebutted. But even in such case, a writer cannot be justified, in giving false and defamatory expressions, which the occasion does not demand. And in this

case, if the jury believe, that the defendants made said report, and used the language therein, *bona fide*, and in the fair exercise of their powers, as such committee, they ought to stand justified from the charge of malice. But if, as the plaintiff claims, the defendants exceeded their authority, as such committee, or introduced language into their report irrelevant to the subject matter committed to them, the presumption of malice is not thereby repelled."

The defendants claimed, that *that* part of the publication, which imputed bad faith to the plaintiff, did not necessarily charge him with moral turpitude. This the plaintiff denied, and claimed that the language of the publication was, as a matter of law, libellous; and requested the court so to charge the jury.

The court did not so instruct the jury; but left it for them to determine, from the facts proved in the case, considered in connexion with the language used, whether the publication in that respect was libellous. " If the jury believed," the court further remarked, " that the plaintiff was induced or influenced to commence and prosecute said action of ejectment against the school-master, by private pique and ill-will only, and with an intention to break up the school in the district, although he might have had a legal right to recover in that action, the jury would be justified in believing, that, in that respect, the plaintiff held light his honour and his duty as a professor of religion. No precise form of phraseology or language is necessary to constitute a libel. In respect to the publication in question, it is for the jury to say, upon a fair construction of it, as connected with the facts and circumstances proved in the case, whether the defendants intended, by said language, to render the plaintiff contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, falsely and maliciously." The court finally instructed the jury, that under the notice of justification, it was not sufficient to justify the defendants from the plaintiff's charge, to have proved the truth of some part only of the libellous charges contained in the publication, but that the truth of all of them must be proved.

The jury returned a verdict for the defendants; and the plaintiff moved for a new trial for a mis-direction.

*Hawley* and *Booth*, in support of the motion, contended, 1. That the powers and duties of the committee did not justify the language used in their report. They were appointed to procure the lease; to consult counsel; and take other steps necessary to maintain the rights of the district. They went beyond their duty in charging the plaintiff with disregard of duty, bad faith, and dishonourable and irreligious conduct. The circumstances attending the publication furnished no justification; for the report was not made to a public body competent to afford redress; the district having, at that time, no power to appoint or to remove committees. 1 *Sw. Dig.* 490. *Stark. Ev.* 868. and n. 3. 874. 2 *Saund. Pl. & Ev.* 374. *Brown* v. *Croome*, 2 *Stark. Ca.* 297. *Lewis* v. *Few*, 5 *Johns. Rep.* 1. *Bodwell* v. *Osgood*, 3 *Pick.* 379. *McGregor* v. *Thwaites*, 3 *B. & Cres.* 24. The court should have decided whether the committee transcended their powers, and also have instructed the jury, that the occasion of the publication, for the reasons above stated, furnished no justification. These questions were improperly left to the jury. *Stark. Ev.* 882, 3. *The King* v. *Holt*, 5 *Term Rep.* 436. 444. *The King* v. *Burdett*, 4 *B. & Ald.* 95. (6 *E. C. L.* 358. 368.) The attention of the jury was drawn from the *truth* of the charges to matters which the court ought to have decided.

2. That "bad faith" involves moral turpitude; and so the court should have instructed the jury. The question whether a writing is libellous, is to be decided by the writing itself; not by a reference to extrinsic circumstances. Extrinsic facts are to be regarded in ascertaining whether the charge is true; not in determining whether it is libellous. But here, the jury were directed to look at the writing *in connexion with extrinsic facts*, to determine whether it is libellous. It is important that the questions of the *character* of a charge, and of its *truth*, be kept *distinct*. The questions should be, first, is the writing, in its character, libellous? secondly, is it true? and thirdly, if not true, did the occasion of the publication justify it? It was not put to the jury to decide, whether the writing, if libellous in its character, was true, or if untrue, was justified by the circumstances attending its publication.

3. That the charge in reference to the action of ejectment,

*Fairfield,* June, 1842.

Haight *v.* Cornell.

*Fairfield,*
*June, 1842.*

Haight
*v.*
Cornell.

was wrong. A court of law cannot declare it to be inconsistent with honour or religious duty, to enforce, by legal process, a legal right. The law cannot regard the enforcement, by its own aid, of a right itself confers, as dishonourable or unrighteous.

4. That the charge was wrong also, because in its conclusion, it left the jury to determine, not from the writing alone, but from that in connexion with extrinsic circumstances, whether the defendants *intended* to render the plaintiff contemptible, &c. The question should have been, what is the *import* of the *writing ;* for the law ascribes to the defendants an intent to say all that the writing imports. This can be gathered only from the writing. It is the writing, and that only, which the public see : they know nothing of extrinsic facts. By the charge, the jury are not to enquire after the truth of the writing, but the intent of the defendants, as gathered, in part at least, from extrinsic facts; and had they, under this charge, found the assertions untrue, yet if they were satisfied, by extrinsic facts laid before them, that the defendants did not intend to render the plaintiff contemptible, &c., though such was the only import of the writing, they must have found for the defendants.

*Bissell* and *Ferris*, contra, contended, 1. That the charge of the court can be sustained, in leaving to the jury the question, whether that part of the report, which imputes bad faith to the plaintiff, standing in the connexion it does, and under the circumstances, is libellous. *Roberts* v. *Camden*, 9 *East*, 95. *Mix* v. *Woodward*, 12 *Conn. Rep.* 287. But if not,

2. That the report, in that respect, does not involve the charge of moral turpitude, and is not libellous. In the first place, it was made by a committee, in discharge of a *public duty.* 2 *Stark. Ev.* 863. 865. Secondly, it is a mere statement of the difficulties they had in obtaining the lease.

3. That that part of the charge of the court, which relates to the plaintiff's " holding light his honour and his duty as a professor of religion," is correct. A man may pursue a strictly legal claim from very corrupt and dishonourable motives.

4. That the language is not libellous. It alleges no act done, and is merely hypothetical. Its import is, that the

plaintiff may cause the district much trouble and expense, holding light his honour and his duty as a professor of religion.

WAITE, J. It appears from the motion, that the plaintiff had commenced an action to recover possession of a school-house. The district to which the house belonged, claimed title to the land upon which it stood, under a lease from the plaintiff. They passed a vote instructing the defendants, the committee of the district, to procure the lease, and submit it to the examination of counsel, and take such steps as might be deemed necessary for the maintenance of their rights.

In pursuance of this instruction, the defendants procured the lease, and having taken legal advice, employed counsel to defend the suit, and then made their report to the district. The plaintiff has set out this report in his declaration, as the foundation of his suit for a libel.

It clearly was a libel, provided it was made falsely and maliciously. The defendants did not, upon the trial, deny this; but insisted, that it was made by them in good faith, and in so doing they were, under the circumstances, justified.

Whether the statements contained in the report were true or false, and the defendants in making them acted fairly and honestly, or maliciously, towards the plaintiff, were questions of fact for the consideration of the jury.

A suit had been commenced to recover possession of the school-house belonging to the district, and although brought against the teacher, yet the district was the real party in interest. They might have been, and probably were, in duty bound to defend him. At any rate, they had a right to do it, and take the necessary measures for that purpose. They had a right to be informed, not only of the facts in the case, but the motives by which the plaintiff was governed in commencing the suit. If he was acting honestly, endeavouring to obtain what he believed justly belonged to him, the district might have preferred the adoption of such measures as were calculated to lead to an amicable arrangement. But if, as the defendants claimed, he sued in consequence of a quarrel with the teacher, and with the design of breaking up the school, such measures might have been considered useless.

The defendants had a right to present his conduct in the

business as they found it, and believed it to be, as a justification of their course in employing counsel to defend the suit, without attempting to negotiate a settlement. And if their report was honestly and fairly made, without malice, and with the design of placing the facts truly before the district for their sanction, and to enable them to judge as to the proper course to be pursued in relation to the suit, they were justified. The judge on the circuit very properly and correctly submitted these questions to the jury. This is in conformity with the practice in similar cases.

Thus, where the defendant had written a letter to the secretary of the general post-office, complaining of the conduct of the plaintiff, a post-master,—*Alderson*, B. informed the jury, that if the letter was a libel, it did not follow, that there must be a verdict in favour of the plaintiff; for if it was written as a *bona fide* complaint, made to obtain redress in the proper quarter, the defendant would be entitled to a verdict, although the contents of the letter might not be strictly true. *Woodward* v. *Lander*, 6 *Car. & P.* 548.

So, where the defendant wrote two letters to a relative, requesting him to join in a suit against the plaintiff, and charging the plaintiff with gross misconduct and fraud, *Tindal*, Ch. J., said to the jury : " You will have to say whether the circumstances under which these letters were written, and the situation of the party to whom they were addressed, satisfy you, that they were written *bona fide* and without malice. If such is your opinion, then, so far as the letters are concerned, the plaintiff will not be entitled to your verdict. There can be no doubt that a man has a right to communicate to another information he is possessed of, in a matter in which they have a mutual interest. You will say whether it is an honest communication of facts, which the party believed to be true, at the time ; or whether it was malicious." *Shipley* v. *Todhunter*, 7 *Car. & P.* 680. Other cases of the like kind might be cited. *Cockayne* v. *Hodkisson*, 5 *Car. & P.* 543. *Todd* v. *Hawkins*, 8 *Car. & P.* 88.

These, however, differ from that class where no justification is set up in the defence, and no claim is made that the publication is a privileged one. There, the party must be considered as meaning what his language fairly imports, and it will not avail him to urge that he did not mean what he

said. The construction of the publication is a question for the court, and not for the jury. *Haire* v. *Wilson*, 9 *B. & Cres.* 643.

In this case, had the defendants assigned no excuse for the publication, it would have been the duty of the court to tell the jury, that it was a libel. But having set up in justification, that it was a communication privileged by the occasion, the object and intent of the defendants in making it, became material in the case, and were necessarily and properly referred to the jury.

We are, therefore, of opinion, that a new trial must be denied.

In this opinion the other Judges concurred.

New trial not to be granted.