WILLIAM J. ATWATER *vs.* THE MORNING NEWS COMPANY.

Third Judicial District, New Haven, January Term, 1896. ANDREWS, C. J., TORRANCE, FENN, HAMERSLEY and HALL, Js.

In an action of libel where publication is admitted and justification is not pleaded, malice is the only issue of fact, and the question of privileged communication is included in that issue; although, since the adoption of the Practice Act, notice in the answer that the claim of privileged communication will be made, may be the better practice.

A privileged communication is inconsistent with the existence of malice, and requires both an occasion of privilege and the use of that occasion in good faith.

An occasion of privilege exists, if the admitted circumstances under which an alleged libel is published are such that the law recognizes a duty on the part of the defendant to make the communication; and this is a question of law for the court. Such occasion, however, is not used in good faith, if the communication is actuated by malice, and is not made for the purpose of performing that duty, but to injure the defendant; and this is a question of fact for the jury. In every case where there is substantial evidence of malice, the question of malice,

including that of privileged communication, is, under the instructions of the court, one of fact for the jury.

The burden of proof of malice is on the plaintiff and is discharged by proof of publication, unless the occasion is one of privilege; and in that case the plaintiff must satisfy the jury of malice in fact by a preponderance of evidence.

Unless the truth of the defamatory charge is pleaded in justification, the defendant cannot prove its truth, either in bar or in mitigation of damages. This rule has not been changed by the Practice Act, and does not prevent the reception of proper evidence of good faith and honest belief in the truth of the charge, although such evidence may also tend to prove the truth of the publication.

The defendant published in its newspaper an article charging the plaintiff, a member of the local board of public works, with illegal and disgraceful conduct in using his official position for his own pecuniary profit, and shielding himself from investigation and removal by means of a corrupt understanding with a majority of the board and certain aldermen of the city. Thereupon the plaintiff sued the defendant for libel. The defendant then published three other articles in its paper of a similar nature, the first of which impugned the plaintiff's private character, ridiculed him for instituting a vexatious libel suit, and attempted to prejudice the case with the public. The plaintiff subsequently filed three additional counts based upon these articles. *Held :—*

1. That the article first published charging the plaintiff with illegal and disgraceful conduct as a member of the board of public works, etc., was defamatory on its face.

2. That the article specified in the second count, published on the commencement by the plaintiff of an action of libel against the defendant, and charging the plaintiff with instituting a vexatious proceeding and attempting to prejudice the minds of the public against him as plaintiff in that cause, was not published on a privileged occasion.

3. That the articles specified in the third and fourth counts, giving information in respect to the official conduct of the plaintiff, with comments on that conduct, were published on a privileged occasion; but did not constitute privileged communications, because the trial court found upon the evidence that the fact of malice was established, and that the occasion of privilege was used for the purpose of malicious injury to the plaintiff.

4. That it was not material, after judgment, whether the fact of malice was supported by the evidence in chief of the plaintiff, or depended upon evidence subsequently introduced; as no such question had been raised during the trial.

5. That inasmuch as the record showed there was proper evidence of malice other than that furnished by the publications themselves, the conclusion of the trial court, upon all the evidence, that malice was proven, was one which could not be reviewed by this court.

6. That it was not necessary to support the judgment, that the trial court should find from the evidence that the libel was in fact false; since that fact was not in issue either by a plea of justification by the de-

fendant, or claim by the plaintiff that malice should be inferred from the falsity of the charge; and could not be put in issue merely by the defendant's claim that the communication was privileged.

As sources of information and as tending to prove its good faith, the defendant offered in evidence certain articles from another city newspaper. The court admitted such of the articles as the evidence showed had been brought to the attention of the writer of the alleged libel prior to its publication, but excluded the others. *Held* that the defendant was not injured by this ruling.

As relevant to the question of malice, the plaintiff was permitted to introduce evidence that prior to the publication of the alleged libel the firm of which he was the head, and by his direction, had withdrawn its advertising patronage from the defendant. It also appeared that such withdrawal was known to the defendant's editor-in-chief when he wrote the article complained of. *Held* that the evidence was properly admitted.

A general objection to the admission of a deposition is insufficient if parts of it are admissible; the objection should be specific.

The plaintiff introduced the city Year Book, showing that members of other city boards on whom no adverse comment was made, had furnished supplies to the city in much larger quantities and under similar conditions. *Held* that under the circumstances detailed in the finding, the admission of such evidence was not erroneous.

In so far as the Act of 1893 requires the Supreme Court of Errors to retry and determine the special facts upon which the judgment of the trial court depends, it is inconsistent with constitutional provisions and inoperative.

While the omission of the trial court to note on the margin of each paragraph of the request for a finding, whether the same was " proven " or " not proven," may be corrected on the appeal, in no case can such omission be ground for the reversal of the judgment.

[Argued February 4th—decided April 15th, 1896.]

ACTION for libel, brought to the Superior Court in New Haven County and tried to the court, *Prentice, J.;* facts found and judgment rendered for the plaintiff to recover $500 damages, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Talcott H. Russell* and *Roger S. Baldwin,* for the appellant (defendant).

The finding that the publications were made without sufficient occasion or excuse, is a proposition of law. In this case there is no conflict of testimony, strictly speaking; that is, no question of veracity between witnesses. *Briggs* v.

*Garrett*, 111 Pa. St., 404. The failure of the court to give weight to evidence, is an error of law. *Rowell* v. *Street R. R. Co.*, 64 Conn., 380. The matters contained in the articles complained of may in general be separated into two classes: 1st, specific statements of fact; 2d, reflections upon the plaintiff based upon such facts. This last class of remarks in regard to a public man occupying a public position, do not constitute the basis of a slander suit, and are privileged. Folkard's Starkie on Slander and Libel, §§ 266, 269, 310; Townshend on Libel and Slander (4th Ed.), § 241; *Ogden* v. *Mortimer*, 28 L. T. N. S., 472; *Miner* v. *Detroit Post and Tribune Co.*, 49 Mich., 364; *Seymour* v. *Butterworth*, 3 Fost. & F., 384; *Bays* v. *Hunt*, 60 Iowa, 251; *Sillars* v. *Collier*, 23 N. E. Rep., 723; *Donaghue* v. *Gaffy*, 53 Conn., 50; *Arnott* v. *Standard Assoc.*, 57 id., 86; *Dickson* v. *Phillips*, 51 N. Y. Sup. Ct., 162. Malice may be sometimes inferred from the defamatory statements themselves, but they must be inconsistent with bona fides and honesty of purpose. *Hart* v. *Gumpach*, L. R. 4 P. C., 439; quoted with approval in *Kent* v. *Bongartz*, 15 R. I., 72. The mere fact that the statements made are intemperate or excessive from over-excitement, will not defeat the claim of privilege. *Brow* v. *Hathaway*, 13 Allen (Mass.), 239, 242; *Wright* v. *Woodgate*, 2 Cromp., M. & R., 573; *Roward* v. *De Camp*, 96 Pa. St., 493. No malice was proved in this case. So far as the conclusion of malice is drawn from the tone of the writings exhibited, it presents a question of law. *Brow* v. *Hathaway, supra.* The court erred in ruling out evidence as to the truth of the charges. In doing so it overlooked entirely the distinction between the law as it existed prior to the Practice Act, and the law existing now under that Act. The old form of pleading in libel contained no specific statement of the falsity of the publication. The only distinct allegation was that of the publication. The complaint contained on p. 115, of forms under the Practice Act, has a specific statement that the publication was false and malicious. But it will be claimed that the law is settled against the defendant's contention, by the case of *Donaghue* v. *Gaffy*, 53 Conn., 52. This question was touched upon in the opinion of JUDGE LOOMIS in that case,

but it did not strictly arise, and his remarks are *obiter*. Malice cannot be implied or inferred from the fact of publishing defamatory words merely, as at common law. *Osborne* v. *Troup*, 60 Conn., 495; *Hotchkiss* v. *Porter*, 30 id., 421. Section 1116 of the Gen. Stat. has been declared, in the case of *Moore* v. *Stevenson*, 27 Conn., 14, and in the case of *Arnott* v. *Standard Association*, 57 id., 94, to have been passed for the protection of the press in the honest publication of news in good faith. In this case the court does not even find the alleged libelous matter false. In this respect the finding differs from that in any other case that the defendant has been able to find. *Osborne* v. *Troup*, 60 Conn., 495. Even without reference to the changes effected by the Practice Act, under the rules of the common law, the defendant would have been allowed to prove the truth of the charge under the general issue; and not only that, but the falsity of the charge itself would be a part of the plaintiff's case, without which he could not recover. *Briggs* v. *Garrett*, 111 Pa. St., 414, and cases cited therein. Newell on Defamation, Slander and Libel, p. 389; *Klinck* v. *Colby*, 46 N. Y., 427; *Kent* v. *Bongartz*, 15 R. I., 72; *Hastings* v. *Lusk*, 22 Wend., 410; *Fowles* v. *Bowen*, 30 N. Y., 24; *Ormsby* v. *Douglass*, 37 id., 477; *Hart* v. *Gumpach*, L. R. 4 P. C. Appeal Cas., 459; *Laughton* v. *The Bishop of Sodor & Man*, 4 P. C. Appeal Cas., 495; *Bromage* v. *Prosser*, 4 B. & C., 256; *Remington* v. *Congdon*, 2 Pick. (Mass.), 310; *Bradley* v. *Heath*, 12 id., 164; *Howland* v. *Flood*, 160 Mass., 509; *Blakeslee & Sons* v. *Carroll*, 64 Conn., 223. The question was whether the defendant corporation was chargeable with malice. The court directed its whole attention to the state of mind of Davenport. It would not admit evidence of articles in other papers which were kept on file in the office of the defendant. This evidence should have been admitted. It showed the existence of probable cause and of an occasion for the attack. If newspapers are privileged in expressing their opinions about the acts of a candidate, they must be privileged to discuss charges, and to state apparent facts which have become public property. *Express Printing Co.* v. *Copeland*, 64 Texas, 354.

*Charles S. Hamilton*, with whom was *William B. Stoddard*, for the appellee (plaintiff).

There is no error in the ruling of the court overruling the defendant's claim " that none of the publications complained of were defamatory." The ruling excluding the proof of the truth of the matter contained in the libelous publication, under the pleadings as they stand, was clearly right. The truth cannot be given in evidence unless specially pleaded, either as a defense or in mitigation of damages. *Donaghue* v. *Gaffy*, 53 Conn., 43; *Swift* v. *Dickerman*, 31 id., 285, 291. The ruling in reference to excluding the articles from the New Haven Register was correct. *Arnott* v. *Standard Asso.*, 57 Conn., 94; *Swift* v. *Dickerman, supra.* The ruling in reference to admitting the deposition of Edward I. Atwater was correct. Malice does not necessarily mean malignancy, hatred, or personal ill feeling. *Osborne* v. *Troup*, 60 Conn., 485, 492; *Wynne* v. *Parsons*, 57 id., 73, 75–8. It is malice if " only that the party doing it was actuated by improper and unjustifiable motives." *Wynne* v. *Parsons, supra.* The defendant was actuated by improper and unjustifiable motives. The ruling admitting proof of the supplies furnished the city by Charles W. Blakeslee & Sons, and The McLagon Foundry Company, was not irrelevant and immaterial, and the ruling admitting it was correct. The ruling excluding the question asked of Criddle was correct. As it appears that Criddle did not talk with Davenport upon the subject, what he had learned from persons whether " in official positions, or private persons," could be of no consequence. The ruling of *Judge Thayer* at a former term, expunging a portion of the defendant's answer, was clearly correct. This court will not attempt to decide pure questions of fact, or reverse a judgment on a question of fact under the law of 1893, under which this case is brought up. *Styles* v. *Tyler*, 64 Conn., 432, 442–61; *Dubuque* v. *Coman*, ibid., 480; *Meriden Sav. Bk.* v. *Wellington*, ibid., 553, 556; *Gilbert* v. *Walker*, ibid., 390, 391.

HAMERSLEY, J. The complaint contains four counts,

each charging the defendant with the publication of a libel concerning the plaintiff. The publications were made on May 15th, 1891, and on the following May 22d, May 25th, and June 23d. The last three counts were added by way of supplemental complaint, alleging that since the action was commenced, the defendant published concerning the plaintiff other libelous matter which "grew out of and was connected with the same libelous matter contained in the original complaint." The defendant's answer admits the publication, and denies the rest of the complaint; alleging that "the defendant published said several articles without any malice in fact against the plaintiff personally, but merely to give what it supposed to be current news, and to make what it supposed to be a just and fair criticism upon the conduct of the plaintiff referred to in his official capacity as a member of the board of public works."

The complaint alleges no special damage, and the answer contains no defense of justification. Publication being admitted, the questions for the trial court were: (1) Was the matter published *per se* defamatory? (2) Was it malicious, including the question of privileged communication? And (3), whether privileged or not, has the plaintiff proved malice in fact, under § 1116 of the General Statutes?

The last question will require no separate discussion, as it must be disposed of in the consideration of the second. As to the first question, it would hardly be claimed that the publications were not libelous with the meaning attributed to them by the innuendoes; and we think that the publications as recited in the complaint and admitted by the answer are, on their face, defamatory.

All the substantial errors claimed by the plaintiff relate to the disposition by the court below of the second question: were the publications privileged? This question, assuming the fact of the publication of defamatory matter, is practically the question of libel or no libel; hence it is necessarily involved in the general issue; and notice in the pleadings that it will be raised on the trial, while permissible, has never been held to be obligatory; although, since the adop-

tion of the Practice Act, such notice is perhaps the better practice. In truth, the fact of a publication being privileged, is the main fact on which most libel actions tried under the general issue depend, and the modern law of libel has been developed to a large extent in cases concerned with the question of privileged communications. It is perhaps unfortunate that the word "privilege" has been used in this connection. In a few instances considerations of public policy, deemed essential to the administration of government, exempt from liability to civil action the author of libelous utterances. Unless in those cases which the necessities of government take out of the domain of private wrongs, the law does not concede to any person under any circumstances the "privilege" of libeling another. Where a citizen is injured by means of a libel, his right to a remedy against the author is guaranteed by the Constitution, and cannot be taken away even by legislation. *Hotchkiss* v. *Porter*, 30 Conn., 414, 421.

The right to an action of libel (where special damages are not sought) depends on a publication of matter affecting the reputation of the plaintiff, of that character which is defined by law as necessarily causing actionable damage, made by the defendant in violation of a legal duty. The two main elements are : injury to the plaintiff and a wrongful act, *i. e.*, an act in violation of a legal duty by the defendant. The first element involves the definition of a defamatory publication, the second, of the duties imposed by law in respect to such publications. These duties are well settled; they are restrictive and permissive ; the general duty which binds every one to absolutely refrain from the publication of defamatory matter, unless he possesses evidences of its truth so certain that he can successfully establish his charge in a court of justice; and the special duty to communicate such matter in good faith upon any subject in which one has an interest, or has, or honestly believes he has, a duty (including certain moral and social duties) to a person having a corresponding interest or duty. An act by which another must be injured, intentionally done in viola-

tion of legal duty, is in law maliciously done, and so it is held that the wrongful act of the defendant essential to actionable libel must be malicious; and this essential element of libel is briefly expressed in the rule—malice is the gist of the action of libel. Where the action is contested in respect to a defamatory publication as a violation of the general duty only, malice is proved by a legal presumption established by the fact of publication; where it is contested in respect to a violation of the special duty, malice must be proved by other evidence. But in either case the malice must be shown by the plaintiff, and in either case the malice consists in an intentional defamatory publication in violation of a legal duty. The claim of "privileged communication" therefore, is not a special defense, but a practical traverse of the plaintiff's allegations; and must be established by evidence overcoming the proof the plaintiff is obliged to furnish in every case, of the defendant's intention to mar his reputation in violation of legal duty.

The defendant claims that the communications were privileged, and that the trial court erred in finding and ruling otherwise. The special facts found by the court are: the plaintiff was one of six members of the board of public works of the city of New Haven; the action of a majority of the board of which the plaintiff was one, was in certain of the public prints and elsewhere called in question and much discussed; the defendant conducted a daily newspaper published in New Haven; the libel charged in each count was contained in extracts from the issue of this newspaper on the date alleged; the main defamatory matter common to all the counts, related to the conduct of the plaintiff as such public officer; the publications were made without sufficient occasion or excuse, recklessly, and in disregard of the plaintiff's rights and the consequences which might result to him therefrom, and for the purpose of injuring him in character and reputation. The court found the publications to be malicious, and rendered a general judgment for the plaintiff.

While the gist of the action of libel is malice, and malice is a fact to be found by the jury, it is nevertheless a fact

which may involve a question of a law. Where, as in the present case, the malice depends upon the contested existence both of legal duty and intention, the definition of duty is for the court, the finding of intention is for the jury. In other words, where the alleged libel is claimed to be a privileged communication, the court must decide whether upon the admitted circumstances the law recognizes a duty to make the communication, and the jury must find upon the evidence whether the communication was in fact made in good faith with intent to perform that duty. The legal character of the occasion is determined by the ruling of the court, the use of the occasion by the finding of the jury. *Haight* v. *Cornell*, 15 Conn., 74, 82; *Brow* v. *Hathaway*, 13 Allen, 239. But the ruling of the court cannot control the ultimate fact at issue, which depends upon good faith and intention that may be decisive of malice, notwithstanding the ruling that the occasion is privileged; and so, as a general proposition, it may be said that the question of whether a publication is a privileged communication, is one for the jury. *Klinck* v. *Colby et al.*, 46 N. Y., 427, 431.

We assume, as claimed by the defendant, that the trial court has found that some portion of the defamatory matter specified in each count is not a privileged communication. Of course, if any specification of libel is supported by the law and the facts found, the judgment on that count is good. *Hillhouse* v. *Dunning*, 6 Conn., 407.

Examining first the second count, the libel charged is as follows :—

" The thunderbolt fell yesterday. And what a thunderbolt! Commissioner Atwater, the immaculate ' Jerry,' bringing suit for libel! And all because The News had up and told the truth about ' Jerry ' and his associates of the potent ' Big Four.' His name should be changed to ' Jerry ' Bluff. Some interesting chapters of Commissioner Atwater's business life are embalmed in the records of the law courts. A bond has taken the place of ' Jerry ' Bluff's attachment on The News corner lot, and it is again free and clear of all incumbrances. Try again, ' Jerry.' Does W. Jere Atwater

represent himself or the 'Big Four' in the threatened court proceedings? It is strong public opinion that the whole Four need justification."

The first four paragraphs were a portion of a news article containing an account of the commencement of this suit, the complaint in which then contained only the first count; the article giving at length the writ and complaint. The remaining paragraphs constituted editorial paragraphs by themselves.

The defamatory nature of this publication is too clear to call for discussion. It consists of an item of news, *i. e.*, the commencement of a civil action, and comments on the plaintiff and his action. The occasion of the publication was the institution of a private suit. The claim that the official acts of a public officer was the occasion, will not hold; it is inconsistent with any honest interpretation of the facts and the language used. Such an occasion is not privileged. There are few rights more important or more carefully protected by law, than the right of the citizen to appeal to a court of justice for redress of his alleged wrongs, and the right to an impartial hearing. Before a cause is finally heard all attempts to prejudice the minds of the public against persons concerned as parties, is forbidden. *Roach* v. *Read*, 2 Atk., 469. Comments in a newspaper reflecting on the plaintiff, and representing the proceedings as vexatious and unprincipled, are in violation of law and may be carried so for as to constitute an offense. *Littler* v. *Thomson*, 2 Beav., 129. There is no exception from this rule, either in law or morals, in favor of a newspaper that is itself the defendant. When a newspaper is sued for an alleged libel in commenting on a public man, such suit cannot operate as a muzzle. It may make such comments as are justified by the duty it owes the public, after as well as before the suit; but when it makes a suit against itself the occasion of a malicious attack on the plaintiff, impunging his private character, charging him with instituting a vexatious proceeding, attempting to prejudice the minds of the public against him as plaintiff in that cause, it plainly violates the law, and it would be a

strange anomaly to hold that a palpable violation of the law is the fulfillment of a legal duty. The libel alleged in the second count was not published on a privileged occasion. The same is true of one specification in the third count. So far as those counts are concerned the judgment is fully sustained.

So far as the judgment rests on the first and fourth counts, the defendant's claim is presented in a different form. The occasion was a privileged one, *i. e.*, information in respect to the conduct of a public officer affecting the performance of his duties, with reflections on that conduct, given by a newspaper to the public interested in a faithful execution of his office. The duty of the Press to give such information and to make such comment, is recognized by law, and its free and fearless performance will be protected by the court; but the very nature of this duty implies good faith. When information both defamatory and false is published of a public officer, accompanied with slanderous comments, and from a malicious motive, such publication, even if its falsity is unknown to the publisher, is not made in performance of any duty legal or moral. Reading the specifications in these counts in the light of all the circumstances shown in the record legitimately bearing on the meaning of the language used, they may be construed as charging that the plaintiff, being a member of the board of public works, himself furnished materials to the city, the use and price of which were subject to the control of the board, in conscious violation of the charter and ordinances ; using his official position for his own pecuniary benefit, and shielding himself from investigation and removal from office through a corrupt understanding with a majority of the board and certain members of the board of aldermen.

The defendant insists that the matters complained of should be separated into two classes : first, statements of fact, *i. e.*, that as member of the board plaintiff was interested in transactions with the city and with the board, and with others, in such a way that he could control the business of the city and get pecuniary benefits therefrom ; second, comments on the

plaintiff based on such facts. If we should hold that the specific statement of facts could be thus separated from the comments that characterize their meaning, we should still have to say that the publications are defamatory; and although published on a privileged occasion, the question of good faith and intention must be settled before they can be held to be privileged communications, and that question is a question of fact.

Confusion sometimes arises between an "occasion" of privilege, and a "privileged communication." There may be an occasion of privilege without a privileged communication, but not the latter without the former. This confusion may be avoided by remembering that these phrases are technical terms used in respect to the evidence by which malice in the defendant—the real issue of fact—is determined. Where the evidence establishes circumstances which the law says support a duty to make a statement of facts honestly believed to be true, or an honest comment on facts, such circumstances are called an occasion of privilege; and when the evidence goes further, and shows that on such occasion the defendant made the communication complained of in good faith with honest intent to perform that duty, it is said the evidence has established a privileged communication. But in all cases the simple question in issue is, was the damage suffered by the plaintiff caused by the malice of the defendant?

The publications in the first and fourth counts were made under circumstances which support a duty to make a communication characterized by the good faith which is essential to that duty, but the trial court has found from the evidence that the communications made by the defendant were not made in good faith, but recklessly, without sufficient excuse, and for the purpose of injuring the plaintiff in character and reputation. We are not now concerned with the nice questions of burden of proof and so-called shifting of that burden, which may occur in the trial of an action of libel. Such questions are not raised. The trial court has found upon the whole evidence that the fact of malice has

been established; that the occasion of privilege was not in fact used for the performance of the duty which the law recognizes on such occasion, but in violation of that duty, and for the purpose of malicious injury to the defendant. Upon such finding the only questions for this court to review are the claims of error in law in reaching the conclusions found.

The defendant claims that inasmuch as the pleadings disclose circumstances from which the court must rule that the occasion was one of privilege, and the publications specified do not contain intrinsic evidence of malice, and the plaintiff adduced no extrinsic evidence of malice, the failure of the court to render judgment for the defendant was an error in law. If this case had been tried to the jury on the first and fourth counts only, and upon the close of the plaintiff's evidence in chief the defendant had moved for a nonsuit, or as suggested in its brief, had filed a demurrer to the evidence, we are not prepared to say that it would not have been entitled to a judgment; the question may not be free from doubt, but it is not before us. The case was tried to the court on all the counts, and the claim that there was no evidence of malice was not made until after the evidence of the defendant was in and the case submitted on the law and all the evidence. While proof of malice is part of the plaintiff's case, his failure to furnish sufficient evidence may be remedied by the evidence of the defendant, and it then becomes the duty of the trier to decide whether upon all the evidence malice has been proven.

The defendant asks us to hold that upon all the evidence, malice in fact was not proven; but that is a question for the trial court. The only question this court can entertain is the claim that the trial court has found malice in the absence of all evidence except that furnished by the publications specified, and this claim is unsupported by the record. The other articles of the defendant's paper produced in evidence, the publications specified in the second and third counts, which would be, even if not contained in the complaint, proper evidence of malicious intent as to the other counts;

the testimony of Mr. Davenport, the president of the defendant corporation and editor-in-chief of the paper, in connection with other evidence; all support facts and inferences from facts tending to prove actual malice in publishing the matter specified in the first and fourth counts.

Such questions of fact must be settled in the trial court. *Osborne* v. *Troup*, 60 Conn., 485, 493; and we think the necessity for leaving such questions to a trial court is inherent in the law of libel. The administration of that law is concerned with two most important rights; the right of the individual to reparation for malicious injuries to his reputation, and the right of the people to liberty of speech, and of the press. The two rights are not inconsistent but interdependent. The individual has no right to demand reparation for those accidental injuries incident to organized society. Freedom of the press is the offspring of law, not of lawlessness, and its primary meaning excludes all notion of malicious injury. Indeed any true freedom of the press becomes impossible where malicious injuries are not forbidden and punished; and the strongest guaranty of that freedom lies in an impartial administration of the law which distinguishes the performance of a public or social duty from the infliction of a malicious injury. The maintenance of this distinction demands uniform principles of law defining the duty; and an exercise of the sound judgment of a trier of fact in reaching the vital conclusion of intent, dependent on evidence and circumstances changing with each case presented, and impossible to confine within the rigid rules of logic that constitute a legal principle. And so the law of libel wisely and necessarily leaves to the judge the declaration of the law—the same for all cases—defining the duty; and commits the question of the actual performance of the duty so defined, to the jury.

The defendant also claims that the judgment is erroneous because the court has not specially found the fact of the falsity of the libel. A malicious libel is presumed to be false, unless its truth is affirmatively proved by the defendant. But where the plaintiff relies upon the falsity to rebut evi-

dence of the defendant's good faith and lawful intention, he must then prove the falsity. So it has correctly been held that when the defendant's evidence tends to prove that the alleged libel was a privileged communication, the plaintiff cannot break the force of that evidence and establish actual malice by relying on the presumption of falsity ; he must prove the defamatory charge to be false and that the defendant knew it was false. In the present case the defendant showed circumstances that constituted an occasion for a privileged communication, but he failed to show the good faith and honest purpose necessary to make the defamatory matter published on that occasion a privileged communication ; on the contrary the court has found that the evidence, unaided by any presumption of falsity, affirmatively proves such actual malice in the defendant, and that the libel is not a privileged communication. In this there is no error. If the claim of the defendant goes so far as to insist that where the defendant has shown circumstances that furnish an occasion for a privileged communication, that then in addition to the burden of proving actual malice and the want of that good faith essential to every such communication, the plaintiff must also assume the burden of proving the falsity of the defamatory charge, the claim is contrary to the settled law of libel. The opinion of the court in *Edwards* v. *Chandler*, 14 Mich., 475, 476 (and in one or two of the cases cited by the defendant), seems to furnish excuse for this claim, but we can hardly think that such was the real intention of the learned judges who gave the opinions in those cases.

The defendant claims error in rulings of the trial court on questions of evidence; and chiefly in the refusal of the court to receive evidence of the truth of the defamatory charge, when offered by the defendant as a defense to the action. This ruling is stated in the finding as follows: " The defendant, as a part of its case, offered to prove that the matters contained in said several publications were true in fact, as a defense to this action. To this evidence the plaintiff objected, on the ground that the truth of the libelous matters was not pleaded; and thereupon the court ruled that the truth could

not be shown as a defense, unless the same was pleaded, but gave the defendant's counsel leave, without costs, to amend its pleadings so as to set up the truth as a defense, if it so desired. This defendant's counsel declined to do. The court thereupon and thereafter declined to receive all testimony offered to show the truth as a defense."

Unless the truth of the charge is pleaded in justification, the defendant is not permitted to prove the truth of the words, either for justification or for the mitigation of damages. Such principle is settled law, and in this State certainly is not open to discussion. *Swift* v. *Dickerman*, 31 Conn., 285, 291; *Donaghue* v. *Gaffy*, 53 Conn., 43, 51. The defendant may, indeed, offer evidence to prove his good faith, an honest belief in the truth of the utterance published, although such evidence may also tend to prove the truth of the charge. *Swift* v. *Dickerman*, *supra*. It is received in such case as, in effect, proof of probable cause, where the occasion of publishing offered *prima facie* evidence of an excuse for stating what may in fact be false, but is honestly believed to be true. *Bradley* v. *Heath*, 12 Pick, 163, 165. There is no claim that the court below failed to apply this rule; and it does not appear that any evidence fairly tending to establish probable cause, either for the purpose of proving a privileged communication, or in mitigation of damages, was rejected because it also tended to prove the truth.

The defendant however, insists that the rule requiring the truth to be specially pleaded in justification, is a rule of pleading which has been changed by the Practice Act; and that the rules of court in authorizing the use in an action of libel, of a complaint containing in a separate paragraph " said publication was false and malicious," give to a denial of that paragraph in the answer, the effect of putting the plaintiff to the proof of the falsity of the publication. This would practically nullify the presumption that a defamatory charge is false; a presumption clearly essential to any adequate protection under the law of libel. The universal principle underlying that law, and a careful study of its curious and complicated development in England, from the first statement

of the principle by Bracton (*de actionibus*, f. 140) to the present century, indicate that the necessity of pleading the truth in justification is more than a rule of pleading or of evidence, and is involved in the very nature of the cause of action ; and that such justification is not a direct denial of the cause of action, but a collateral matter which, if established by the defendant, will bar the recovery that otherwise must follow the malicious injury, without questioning the truth or falsehood of the defamatory charge. At all events, it is clear that a law forbidding any recovery for injuries caused by a malicious libel, unless the person injured shall prove the falsity of the charge, would give immunity to a considerable class of dangerous libels, and radically change the existing law. The Practice Act has not produced such a change. The form cited by the defendant does not purport to state a new cause of action, but the same cause in a different way. In the ordinary action of libel claiming only general damages, the falsity of the libel is not a material fact on which the plaintiff relies in order to prove his case, and it has never been deemed necessary to allege it in the declaration. It has however, uniformly been used as descriptive of every libel. Malice is a material fact on which the plaintiff relies, and it has always been necessary that it should clearly appear from the declaration. Under the old practice the allegation of malice and the descriptive term of "false," have been used in alleging the publication ; under the new practice the publication is separately alleged in order that it may be separately admitted or denied, and the allegation of malice with the old descriptive term of false, is made in a paragraph by itself. The truth becomes a material fact on which the pleader relies where the defendant intends to justify, and must then be alleged in proper form as a special defense ; otherwise the falsity is not in issue. *Donaghue* v. *Gaffy, supra.*

The other claims of error in rulings on evidence do not call for special comment. The court admitted as evidence articles from a New Haven newspaper, claimed as sources of information on which the defendant relied to prove good

faith; and rejected evidence of other similar articles, because they were not brought to the attention of the defendant before the alleged publication. If the case had been tried to the jury, possibly a question might have arisen whether the whole evidence should not have been submitted to the jury; but as similar articles were properly admitted, and the court was satisfied and found that the evidence offered did not prove that these particular articles were seen by the defendant, it is difficult to see how the defendant was injured.

Portions of the deposition of Edward I. Atwater tended to prove the fact that prior to the alleged libel the firm of which the plaintiff was the head, and by his direction, withdrew its advertising patronage from the defendant. We cannot say that this fact, in connection with the fact also appearing in evidence, that such withdrawal was known to the editor-in-chief who was president and a stockholder of the defendant corporation, when he wrote the alleged libel, was not relevant to the fact of malice. The objection to the deposition was a general one; and a part of it being admissible, it would not have been proper for the court to exclude it, even if it contained other matters obnoxious to a specific objection. *Merriam* v. *H. & N. H. R. R. Co.*, 20 Conn., 354, 363.

The admission of the evidence contained in the city Year Book, showing that members of other city boards on whom no adverse comment was made, had furnished supplies to the city under circumstances similar to those claimed in respect to the plaintiff, and to an extent in comparison with which the supplies furnished by the plaintiff were trivial in amount, was not, under the circumstances detailed in the finding, erroneous.

The exclusion of the question asking the witness Criddle whether, subsequent to the publications, he had seen the testimony in the case of the Globe Sewer Co., was correct. The exclusion of a question to the same witness, whether persons from whom he had received information which he had not communicated to the editor-in-chief and whose names he did not know, were persons in official positions or private

persons, was not error. We have carefully considered all the objections made by the defendant, and are satisfied that no one furnishes ground for a new trial.

The court did not err in expunging paragraph five in the defendant's answer to the second count. It was plainly unnecessarily prolix, and a statement of evidence rather than of fact. It was not a justification—if so, it should have been stated as a separate defense—and its expunging could not injure the defendant. *Page* v. *Merwin*, 54 Conn., 426, 435.

The reasons of appeal assign seventy-two errors. Those properly relating to questions of law are disposed of by the views we have expressed. The other assignments do not state errors in respect to the rulings and decisions of the court upon questions of law arising in the trial, but grounds for an application to rectify the appeal.

By operation of § 1141 of the General Statutes, as extended and enlarged by the valid portions of the Act of 1893 (Public Acts of 1893, p. 318) the application authorized by that section for a correction of the appeal, may be contained in the appeal itself, and be determined on argument of the appeal, upon an inspection of the record, as well as upon any other inquiry which the provisions of that section may authorize. *Styles* v. *Tyler*, 64 Conn., 432, 461. The grounds for such application are not "reasons of appeal," and cannot ordinarily, if ever, furnish ground for reversal of judgment or for a new trial; although pending the adoption of rules of practice (which, as intimated in *Styles* v. *Tyler*, would be essential to the regulation of such application if the Act of 1893 remained unchanged), the improper intermingling of the grounds for an application to correct the appeal with the "reasons of appeal," has been overlooked.

Upon examination of the assignments of error which relate to the action of the judge in preparing the finding necessary to properly present the objections to testimony and his rulings, and a careful inspection of the whole record,—testing the errors claimed by the facts appearing in the record not included in the finding—we are satisfied that the finding, as prepared by the judge, presents these questions fairly and

with sufficient fullness; and that no correction which we could make would affect the nature of the questions presented, or our decision upon them.

The assignments which relate to the defendant's claim that the special facts on which the judgment is founded, are against the weight of evidence, and that the appeal should be corrected by altering the finding in this respect, demand consideration. The defendant in argument insists specially on his second reason of appeal and his seventh ground of appeal—*i. e.*, that the court erred in finding facts repugnant to the special facts claimed by the defendant to have been proved, and which the court found to be untrue. This claim goes to the root of the defendant's alleged grievance, and is in truth the substantial ground of his appeal. The defendant, in his request for a finding, asked the court to incorporate in the finding the following facts, which he claimed to be proved by the evidence: No personal malice existed against the plaintiff on the part of the defendant, or Mr. Davenport, its managing editor, who caused the article to be published (so far as related to proof of malice both parties treated Mr. Davenport as practically the defendant); no malice existed, unless it must necessarily be inferred from what is contained in the articles published; Davenport caused the articles to be published in the belief that the facts specified in respect to the plaintiff were true; in the belief that the plaintiff's acts charged were prejudicial to the city, in violation of law, and demanded his removal from office; in the belief that it was his duty to criticise said acts as the acts of a public officer and as items of news; such belief was based on investigations and careful inquiries in regard to the truth of the matters charged, and also on articles published in other journals; there was good reason to believe the charges to be true; there was no malice in fact.

The court did not find these facts from the evidence, but found facts entirely repugnant, as stated in the record. If we can re-try these facts, and should be of opinion that the facts as claimed by the defendant are clearly supported by the weight of evidence, we must find such facts, incorporate

them with the facts on which the judgment is founded, and reverse that judgment for a patent error in law.

The defendant does not make the broad claim that this court can re-try all facts found by the trial court; but that when the question of law involved depends on the special facts found, the Act of 1893 requires this court to re-try and adjudge such facts as incident to the review of the question of law; and that the re-trial of such facts is not inconsistent with the recent decisions of this court. Such a claim, essential to the determination of this appeal, requires us to restate the principle established in *Styles* v. *Tyler, supra* (p. 442). In that case we said: "In 1834, CHIEF JUSTICE DAGGETT in delivering the opinion of the court in *Weeden* v. *Hawes,* 10 Conn., 54,—JUDGE PETERS, a member of the Constitutional Convention of 1818 concurring, and JUDGE CHURCH, another member of that convention being then a member of the court, though not present when the case was decided— said that this court was a Court of Errors and had 'no constitutional power to decide a question of fact,' and in 1867 this court expressed the opinion that 'it was the intention of the framers of the Constitution that the Supreme Court of Errors should be a court for the correction of errors *in law.*' The language used clearly imports this, and such has been the understanding of the legislature, of the courts, and of the people of the State. *Dudley* v. *Deming,* 34 Conn., 169, 174. We did not in that case discuss the reasons for the opinion given, but we are now satisfied of its correctness after a careful re-examination of the provisions of the Constitution."

For this reason,—because the jurisdiction of this court as fixed by the Constitution relates to correction of errors in law and not to the re-trial of questions of fact,—we held "that the Act of 1893 does not require this court to determine upon evidence spread upon the record questions of pure fact settled by the trial court;" and for the same reason and in order to give some effect to an Act of the legislature, we held that "the Act as a whole fairly expresses a purpose, consistent with the jurisdiction of this court, in language not so inter-

woven with the uncertain and defective language as to make
it impossible to give effect to that purpose." And that pur-
pose was "to provide a further and additional remedy" for
the correction of an appeal, to furnish "additional facilities
for the application to this court for a correction of the appeal,
as authorized by the General Statutes, § 1141."

The present claim is that the appeal raises a question of
law, i. e., is the judgment for the plaintiff a legal conclusion
from the facts found? The defendant claims that the facts
settled by the trial court are connected with this question of
law, i. e., upon the facts as found by the court the question
must be decided one way, while upon the facts as found by
the defendant it must be decided the other way; and that
the Act of 1893 requires this court, as an incident to the cor-
rection of the appeal, to determine upon the evidence the
questions of fact settled by the trial court, to substitute our
findings of fact for those of the trial court, and then to reverse
the judgment of the court below for errors in the application
of law to facts it had not found.

It is patent that the real substance of such a proceeding is
nothing but a re-trial of pure questions of fact settled by the
final judgment of the Superior Court. Its actual nature can-
not be changed by calling it a correction of the finding. A
re-trial upon the testimony and the adjudication of essential
facts on which a judgment is founded, by whatever name it
may be called, is a trial of the facts in that cause, whether
its effect be limited to ordering a new trial, or extends to the
rendition of a final judgment on the facts so adjudicated;
and is inconsistent with the primary distinction drawn by
the Constitution, between the jurisdiction original and appel-
late of courts for the full trial and adjudication of causes,
and the jurisdiction of a court of last resort for correcting
errors in law which may have intervened in the course of a
trial. Facts found by a trial court upon hearing and con-
sidering the testimony and upon which is founded a judg-
ment complained of as not being the true voice of the law
upon such facts, can only be re-tried in courts to which the
Constitution commits a jurisdiction for the adjudication of

such questions. The Superior Court is the court of last resort for such purpose. When the jurisdiction of this court —the court of last resort for the determination of questions of law—is invoked to correct errors involved in such a judgment, the facts upon which the questions of law arise, must have been settled; the function peculiar to trial courts of adjudicating the facts as established by testimony, must have been exhausted; and the facts so settled as well as the judgment they support, are final, unless this court shall declare that the judgment is erroneous, *i. e.*, not the true conclusion of the law from the facts. Such a principle embedded in the Constitution should not be applied in any technical or narrow spirit, but broadly so as to give a reasonable effect to its essential purpose; and it cannot be evaded through any plan for accomplishing by a mere form of words the very evils it was adopted to prevent.

In accordance with the provisions of the Constitution establishing the jurisdiction of this court, and the contemporaneous construction of that instrument to be found in the legislation first enacted to carry out its provisions, and remaining unchallenged for a period of seventy-five years; with the uniform practice of this court since its organization; with its opinion clearly expressed in *Weeden* v. *Hawes*, and *Dudley* v. *Deming*, and its deliberate decision in *Styles* v. *Tyler*, we think the Act of 1893, in so far as it requires this court to determine such questions of fact, is inconsistent with constitutional provisions and inoperative.

The defendant's supplemental reason of appeal assigns as error, the failure of the court to note on the margin of each paragraph in the request for a finding, either "proven" or "not proven." While in a proper case the omission of the court to so mark each paragraph might be corrected, in no case could such omission be ground for reversal of the judgment. In *Ketchum et al.* v. *Packer*, 65 Conn., 544, 552, we stated that the words "found" and "not found" were equivalent to the statutory words, although their use could not be approved, and that a paragraph which could not be found proven as a whole, should be marked not proven. In *Styles*

v. *Tyler*, 64 Conn., 432, 462, we held that the record might show that the facts detailed in a request for the incorporation of facts, were found proven, although no note of " proven " was made ; and it is also true that the record might show the facts to have been found not proven, without such note. In the present case the record shows sufficiently for the protection of the defendant's interests, what facts were found by the court to be proven or not proven ; whatever may have been the cause of the omission.

As the Act of 1893 has been repealed since this appeal was taken, further comment on such matter of practice is unnecessary.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.