## BUTLER v. EVENING LEADER CO.

### (Circuit Court, D. Connecticut. February 17, 1905.)

### No. 551.

LIBEL—PLEADING—DEFENSES.

> In an action for libel against a newspaper company, special defenses in the answer, following a general denial, alleging, respectively, that the publication referred to a person other than plaintiff, and that the publication was a news item received in the usual course of business, and published in good faith, are demurrable; both defenses being admissible under the general issue.

At Law. Action for libel. On demurrer to answer.

The substantial portion of the complaint is:

"(1) The defendant corporation was during the year 1903, and for many years previous thereto had been, the owner and publisher of a daily newspaper known as 'The Evening Leader,' which during said years was published in the city of New Haven, state of Connecticut, and had a large circulation in said city, and throughout the state of Connecticut and elsewhere.

"(2) In the year 1903 the plaintiff was, and for many years prior thereto had been, a professional wing and rifle shot and actress, and had been giving performances under the name and style of 'Annie Oakley,' and is almost exclusively known by that name, and under said name had for many years been connected with, and one of the principal performers in, 'Buffalo Bill's Wild West Show,' commanding a large salary, and her performances constituted one of the principal attractions of the exhibition given by that company.

"(3) On August 11, 1903, the defendant published in its newspaper, the Evening Leader, the following headlines concerning the plaintiff:

> "'Annie Oakley's Plight.

> "'Famous Performer Arrested in Chicago for Robbery.'

And after said headlines the following words concerning the plaintiff:

> "'Chicago, Aug. 11.

"'Annie Oakley, who says she won the applause of King Edward of England, by an exhibition of markmanship at Buckingham Palace, was a prisoner in the Harrison Street police court Monday. She was arrested on complaint of Charles Curtis, who charged her with robbery. She pleaded guilty and was fined $25. According to the police, the woman is addicted to the use of drugs.

" 'She formerly was with Buffalo Bill's show and commanded the salary of a light opera prima donna, was petted and feted and awarded the honors at meetings of fashionable gun clubs. She was arraigned yesterday in Justice Caverty's court and her pitiful condition discovered.

" 'She was destitute and forced to accept shelter from an old colored man named Curtis. It was he who had her arrested. He relented, however, and would not appear in court against her on seeing her condition. Justice Caverty nevertheless sent her to the Bridewell for 25 days, to be restrained and cared for and treated there.'

"(4) Said publication was false and malicious.

"(5) By reason of said publication the plaintiff has been, still is, and will be greatly and permanently injured in her good name and credit, and has suffered great mental anguish and bodily pain, and her health has been to such an extent impaired that she is and will be physically and mentally incapacitated from performing her professional duties and earning a livelihood as a professional wing and rifle shot and actress, whereby the plaintiff has suffered and will suffer heavy pecuniary loss. The plaintiff claims $10,000 damages."

### Second Defense.

"(1) The defendant further answers said complaint, and says that on or about the 10th day of August, 1903, in the city of Chicago, state of Illinois, one Lillie Cody was arrested, prosecuted, tried, and found guilty in the police court of the city of Chicago, First District, before Justice John R. Caverty, upon the complaint of one Charles Curtis, and that said court found said accused guilty, and fined said accused twenty-five dollars, together with the costs; and the court further ordered and adjudged that, if in default or refusal on the part of said defendant to pay said fine and costs, that said accused be committed to the house of correction, there to be detained until said fine, penalty, and costs should be found paid and satisfied, provided said imprisonment shall not exceed the period of six months from the time of her commitment, and that execution issue therefor.

"(2) That said defendant, Lillie Cody, claimed to be related to William Cody, better known as 'Buffalo Bill,' by marriage; and the said Lillie Cody further claimed that she was an expert rifle shot, and had been connected with the show known as 'Buffalo Bill Show,' and that she had often given entertainments, both public and private, in markmanship, and that she was known by the name of 'Annie Oakley.'

"(3) The defendant says that each and every part of said publication, as set out in the third paragraph of the plaintiff's complaint, refers solely to the aforesaid trial and conviction of the aforesaid Lillie Cody, and to the statements and claims made by the said Lillie Cody as to her occupation and name, and to no other person whatever.

### Third Defense.

"(1) The defendant further answers said complaint, and says that said publication as set out in the plaintiff's complaint was received by the defendant in its regular course of business, as an item of current news, from the Publishers' Press Association, and the defendant published the same in good faith.

"(2) The defendant says that said Publishers' Press Association is an organization doing a large business both in this and in foreign countries in obtaining current news and matters of public interest, and that said association uses all proper and suitable precautions to obtain a fair and true statement of facts, and that said news and facts so obtained by said association are telegraphed to the different newspapers connected with said association, with the expectation that said news so telegraphed should be published.

"(3) This defendant now has, and for many years last past has had, a contract with said Publishers' Press Association, in which this defendant pays said association large sums of money each year, and that association, in return therefor, is bound to and does furnish to this defendant items of current news and matters of public interest to be published by this defendant;

and this defendant says that the article set forth in the plaintiff's complaint was obtained in its regular course of business from said Publishers' Press Association, and published in good faith."

### Demurrer to the Second Defense.

"The plaintiff demurs to the second defense:

"(1) Because the allegations therein do not constitute a justification for the publication of the libel complained of, as it is not averred that the words published of the plaintiff were true, or that the plaintiff was the Lillie Cody therein named.

"(2) Because said allegations are equivalent to the denial contained in the first defense, and the facts alleged, if admissible at all, are admissible only by way of mitigation of damages under the denial heretofore pleaded, and cannot be pleaded either in bar of the action, or as bearing upon the question of damages.

### Demurrer to the Third Defense.

"The plaintiff demurs to the third defense:

"(1) Because the fact that the libel was published upon information received from others constitutes no defense to the action.

"(2) Because the fact that the information was received in the regular course of business, and was published in good faith, constitutes no defense to the action.

"(3) Because said allegations are equivalent to the denial contained in the first defense, and the facts alleged, if admissible at all, are admissible only by way of mitigation of damages under the denial heretofore pleaded, and cannot be pleaded either in bar of the action, or as bearing upon the question of damages."

Watrous & Day, for plaintiff.
Stoddard & Goodhart, for defendant.

PLATT, District Judge. As to the second defense: If it be assumed that both Annie Butler and Lillie Cody had appeared as wing shots with Buffalo Bill under the nom de plume of "Annie Oakley," and that both had been praised by King Edward, etc., even then a statement that "Annie Oakley, the wing shot," etc., passed through the experience set forth in the article, with no earmarks pointing to Lillie Cody, would not, as I read it, be a complete justification as against the plaintiff. As the case will stand, the plaintiff must bear the burden of showing that the article referred to her; and the defendant, in denying that, is at liberty to show that it referred to some one else. If it referred to some one else, and not to plaintiff, it is unimportant whether it is true or false.

The facts alleged in the third defense can be introduced under the general issue. Atwater v. Morning News Co., 67 Conn. 510, 34 Atl. 865. Notice of intention to produce them is permissible under the practice act, but a definite defense can hardly be construed to be such a notice and nothing more.

Let the second and third defenses be stricken out, at defendant's costs.